**No. 24-7620**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

ANDERSON SILVA and GRACE JONES, on behalf of themselves,
the general public, and those similarly situated,
*Plaintiffs-Appellants*,

v.

HALEON US INC. and HALEON US HOLDINGS LLC
*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of California
No. 24-cv-04059
Hon. Trina L. Thompson

---

# PLAINTIFFS-APPELLANTS' OPENING BRIEF

---

Seth A. Safier
seth@gutridesafier.com
Matthew T. McCrary
matt@gutridesafier.com
Rajiv V. Thairani *(application pending)*
rajiv@gutridesafier.com
GUTRIDE SAFIER LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs-Appellants*
*Anderson Silva and Grace Jones*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

JURISDICTIONAL STATEMENT .......... 4

ISSUES PRESENTED .......... 4

STATEMENT OF THE CASE .......... 5

A. Defendants Advertise Sensodyne Pronamel Toothpaste with the Claims "Rebuilds," "Restores," and "Repair[s]." .......... 5

B. Defendants Sell the Products Pursuant to the FDA's Fluoride Monograph, Which Expressly Prohibits the Challenged Claims. .......... 9

C. FDAMA's Express Preemption Clause Permits States to Enact Their Own Labeling Regulations if They Are Identical to Federal Law .......... 11

D. Plaintiffs Bring Their Claims Under California Law Which Mirrors Federal Labeling Requirements. .......... 12

E. The FDA Warning Letters from September 27, 2010. .......... 13

F. The District Court Erroneously Dismissed Plaintiffs' Claims as Preempted Even Though Their State Law Claims Impose Duties that Are Identical to Federal Law. .......... 16

SUMMARY OF THE ARGUMENT .......... 18

STANDARD OF REVIEW .......... 21

ARGUMENT .......... 22

A. The District Court Erred In Holding that Federal Law Expressly Preempts Plaintiffs' Consumer Deception Claims. .......... 22

B. The District Court Erred In Holding That Courts Are not Competent to Enforce the FDCA's Misbranding Provision.....26

C. The District Court Erred in Holding that an FDA Monograph Should Be Subject to a Different Preemption Analysis than Other Federal Laws. .....31

D. The District Court Erred In Holding that the FDA Warning Letters' Silence Amounted to a Binding "Evaluation" that the Terms "Rebuilds" and "Restores" Are Authorized. .....35

CONCLUSION .....39

# TABLE OF AUTHORITIES

## Cases

*Aguayo v. U.S. Bank*, 653 F.3d 912 (9th Cir. 2011) ............................................21

*Astiana v. Hain Celestial Grp.*, Inc., 783 F.3d 753 (9th Cir. 2015) ................ passim

*Botany Mills v. United States*, 278 U.S. 282 (1929)............................................25

*Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371 (S.D.N.Y. 2014) ............ 29, 30

*Christensen v. Harris County*, 529 U.S. 576 (2000) ............................................37

*Davidson v. Sprout Foods, Inc.*, 106 F.4th 842 (9th Cir. 2024) ...................... passim

*Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177 (C.D. Cal. 2011) ............ 32, 33, 34

*Duncan v. Walker*, 533 U.S. 167 (2001)..............................................................26

*Eckler v. Neutrogena Corp.*, 238 Cal. App. 4th 433 (Cal. Ct. App. 2015) .............30

*Kisor v. Wilkie*, 588 U.S. 558 (2019)....................................................................38

*Kroessler v. CVS Health Corp.*, 977 F.3d 803 (9th Cir. 2020)....................... passim

*Krommenhock v. Post Foods, LLC*, 2017 WL 2378029 (N.D. Cal. June 1, 2017) .22

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).......................................38

*Lopez v. Wash. Mut. Bank*, 302 F.3d 900 (9th Cir. 2002) ......................................21

*Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185 (9th Cir. 2018) .................................21

*Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453 (1974) ....................................................................................................................24

*Perrin v. United States*, 444 U.S. 37 (1979) ..........................................................24

*Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015) ....................... 22, 31, 37

*Rice v. Norman Williams Co.,* 458 U.S. 654 (1982)..............................................32

*Sandifer v. U.S. Steel Corp.*, 571 U.S. 220 (2014) .................................................24

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).......................................................38

*Souter v. Edgewell Personal Care Co.*, 542 F. Supp. 3d 1083 (S.D. Cal. 2021) ....25

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ................................27

*Wiltz v. Chattem, Inc.*, No. CV 15-1352-R, 2015 WL 3862368 (C.D. Cal. May 8, 2015) ..........................................................................................25

*Wyeth v. Levine*, 555 U.S. 555 (2009) ..............................................................4, 31

**Statutes and Regulations**

21 C.F.R. § 330.1 ........................................................................................ 10, 23

21 C.F.R. § 330.1(d) ..........................................................................................23

21 C.F.R. § 355.1(a)...........................................................................................23

21 C.F.R. § 355.10 .............................................................................................26

21 C.F.R. § 355.50(c)(2) .....................................................................................37

21 U.S.C. § 331 ....................................................................................................1

21 U.S.C. § 343(a) ..............................................................................................30

21 U.S.C. § 352(a) ......................................................................................... passim

21 U.S.C. § 355h ........................................................................................ 10, 23

21 U.S.C. § 362(a) ..................................................................................... 28, 30

21 U.S.C. § 379r.................................................................................. 11, 12, 16

21 U.S.C. § 379r(a) ............................................................................. 12, 22, 33

21 U.S.C. § 379r(f)..............................................................................................12

28 U.S.C. § 1291 ..................................................................................................4

28 U.S.C. § 1332(d) .............................................................................................4

Cal. Bus. & Prof. Code § 17200 .........................................................................13

Cal. Health & Safety Code § 111330 ................................................ 12, 13, 27, 29

**Other Authorities**

MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/restore..............................................................26

## INTRODUCTION

This appeal presents a straightforward question: Are state-law claims preempted when they seek to enforce labeling duties that are identical to those imposed by federal law? Under well-established precedent, the answer is no.

The FDCA's misbranding provisions generally prohibit drug manufacturers from selling products with labels that are "false or misleading in any particular." 21 U.S.C. § 352(a); 21 U.S.C. § 331. California's Sherman Law incorporates and mirrors the FDCA, and the regulations issued under the FDCA. Moreover, toothpaste products (such as those at issue in this case) are sold pursuant to the FDA's Anticaries Monograph, which authorizes one—and only one—therapeutic indication on toothpaste labels: cavity prevention. Any statement on the toothpaste label about the benefit of the toothpaste must (a) be "truthful and nonmisleading" and (b) describe solely the permitted indication (that is, explain only that the toothpaste aids in preventing cavities or decay, and nothing more). 21 C.F.R. § 355.50(b). Manufacturers are prohibited from selling fluoride toothpaste products that do not satisfy both of these criteria.

In violation of the Monograph, the general misbranding provision of the FDCA, and California's Sherman Law, Defendants Haleon US Holdings LLC and Haleon US Inc. ("Defendants") prominently claim that their Sensodyne Pronamel toothpaste Products "Rebuild[]," "Restore[]," and "Repair" enamel. These front-

label claims communicate to ordinary consumers that the Products can reverse enamel loss—a promise of regeneration, not merely prevention. But fluoride, the Products' only active ingredient with any effect on enamel, is approved solely to help prevent dental cavities and decay. It cannot *rebuild*, *restore*, or *repair* enamel.

Plaintiffs allege that Defendants' misleading and unauthorized claims violate California law. As this Court has repeatedly held, private litigants may bring actions to "enforce violations of 'state laws imposing requirements identical to those contained in the FDCA.'" *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 808 (9th Cir. 2020); *see also Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 845 (9th Cir. 2024) (state-law causes of action based on violations of California's Sherman Law are neither expressly nor impliedly preempted by the FDCA).

Despite controlling Ninth Circuit precedent, the district court dismissed Plaintiffs' claims on preemption grounds. It reasoned that because the Anticaries Monograph does not expressly and specifically identify the terms "Rebuilds," "Restores," and "Repair[s]" as prohibited terms, Plaintiffs' state-law claims demanding their removal necessarily impose "additional" requirements that are inconsistent with the Monograph. The district court stated that allowing judges (rather than only the FDA) to determine whether such terms are misleading would be inconsistent with national uniformity in the regulation of the Products. That reasoning reflects a fundamental misunderstanding of both the federal and state

regulatory frameworks. The Monograph is not a blanket approval to use any health claim a manufacturer wishes except for a list of forbidden claims; to the contrary, the Monograph sets forth a single type of health claim that is specifically permitted (that the product aids in the prevention of cavities and tooth decay) and federal law prohibits *all other claims*. Because the claims at issue are not specifically authorized by the Monograph, they are necessarily prohibited. In any event, even if the challenged terms were not expressly prohibited by the Monograph, they are not affirmatively authorized either, and thus remain subject to the FDCA's misbranding prohibition. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 758 (9th Cir. 2015) (allowing state-law claims to proceed where the challenged "natural" labeling on cosmetics was neither authorized nor prohibited and remained subject to the FDCA's misbranding provision).

Accepting the district court's reasoning would lead to absurd results: it would exempt toothpaste (and other OTC drugs subject to monographs) from state or private enforcement actions related to virtually any unauthorized claim (such as that a toothpaste product cures mouth cancer) simply because the Monograph does not specifically forbid such language. Despite having already generally prohibited such unauthorized claims, the FDA (and only the FDA) would then have to play whack-a-mole, adding each and every unauthorized claim that manufacturers introduce in the market to an endless list of prohibited claims, while consumers and states suffer

and while courts stand idly by. That is plainly inconsistent with congressional intent and the wording of the FDCA and applicable regulations. *See Wyeth v. Levine*, 555 U.S. 555, 578 (2009).

For these reasons, the district court's decision must be reversed.

## JURISDICTIONAL STATEMENT

Plaintiffs Anderson Silva and Grace Jones filed their complaint in the Northern District of California on July 3, 2024. ER-27. On December 2, 2024, the district court entered an order dismissing the action. ER-14. Plaintiffs timely filed a notice of appeal on December 16, 2024. ER-63. On February 3, 2024, the district court issued final judgment. ER-3.

The district court had jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because the aggregate claims of the putative class exceed $5 million and at least one plaintiff is from a state different than one defendant. ER-3 (CAC ¶ 12). This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Did the district court err in holding that the FDCA's express preemption clause bars Plaintiffs' state law claims under California's consumer protection statutes, where Plaintiffs' state law claims seek to impose obligations that are identical to Defendants' duties under federal law?

2. Did the district court err in holding that only the FDA—not courts—may determine whether terms not expressly identified by name in an applicable monograph or regulation are misleading?

3. Did the district court err in rejecting binding Ninth Circuit precedent and holding that products subject to an FDA monograph are governed by a different preemption framework than other FDA-regulated products?

4. Did the district court err in holding that the FDA's failure to object to "restores" and "rebuilds" enamel claims in warning letters—where those claims appeared on mouthwash product labels but were not specifically addressed—constituted an "evaluation" that such claims are permissible under the Anticaries Monograph, despite the FDA's statement that this was not its intent?

## STATEMENT OF THE CASE

### A. Defendants Advertise Sensodyne Pronamel Toothpaste with the Claims "Rebuilds," "Restores," and "Repair[s]."

Defendants are the manufacturers of Sensodyne Pronamel toothpaste. ER-28, 30 (Class Action Complaint ("CAC") ¶¶ 1 n.1, 17). The brand name "Pronamel" is a portmanteau of the words "pro" and "enamel," which conveys that the Product line is intended *for enamel. See* ER-31 (CAC ¶ 21). Aside from a numbing agent, the only active ingredient in the Products is fluoride, which is present in substantially the same concentration as any ordinary anti-cavity toothpaste. ER-31, 35, 40 (CAC ¶¶ 19, 39, 61–62). Although fluoride prevents cavities and tooth decay through a

process called remineralization, it cannot, and does not, rebuild, restore, or repair lost enamel. ER-35 (CAC ¶ 41).

There are multiple varieties of Pronamel toothpaste. Defendants market Sensodyne Gentle Whitening with the following label:




ER-31 (CAC ¶ 22). Defendants include lawful claims that the Products can be used for "Cavity Prevention" and "Enamel Protection" (the "Prevention Claims"). *Id.* (CAC ¶¶ 22–23). However, in addition to the Prevention Claims, Defendants falsely represent that the Products "Rebuild[]" and "Restore[]" enamel ("Rebuild Claims"). The ordinary meaning of these words communicate that the Products do more than just protect existing enamel—that they actually reverse enamel loss. ER-28, 31 (CAC ¶¶ 2, 23). Defendants market several versions of the Products with similar labeling.[1]

Defendants contend that the Rebuild Claims mean that the Products only help

[1] The Sensodyne Pronamel Multi-Action, Daily Protection, and Fresh Breath Products all have substantially identical labels. ER-32 (CAC ¶ 23 n.4).

to protect *existing* enamel (through a process known as remineralization) *without* fostering any additional or thicker enamel—but the Products do not indicate such a limited meaning to ordinary consumers. Indeed, the word "remineralization" appears nowhere on the Products. *See* ER-31–32 (CAC ¶¶ 22, 24). Further, reasonable consumers do not know, and are not expected to know, about remineralization because it is a highly technical process. ER-37 (CAC ¶ 50). Therefore, it is implausible that the reasonable consumer would understand Defendants' Rebuild Claims to mean that the Products merely remineralize existing enamel, and that the Products do not promote any enamel regrowth. *Id.*

Defendants also sell another version of the Product called Pronamel Intensive Enamel Repair Whitening. The Product has identical active ingredients in the same concentration and is sold with the following label:




ER-33, 35 (CAC ¶¶ 29, 39). The front label of Pronamel Intensive Repair toothpaste states in large lettering, without qualification, that the Products provide "Intensive Enamel Repair." ER-33 (CAC ¶¶ 29–30). Additionally, there is another claim that the Product "Repairs Weakened Enamel," marked with an asterisk that refers to the

side panel (collectively, the "Repair Claims"). *Id.* The asterisk is inconspicuous, hidden among sparkles on the packaging. *Id.* As with the Gentle Whitening Product, Defendants include some truthful Prevention Claims such as "Cavity Prevention" on the front label. *Id.*

Defendants' front-label Repair Claims are unambiguous. *See id.* However, even if a consumer were to review the side panel, it does not clarify that the Intensive Repair Product cannot truly repair thinning enamel:

Type text here




ER-33–34 (CAC ¶¶ 30–33). The side panel explains that "[a]cids in modern diets can weaken your enamel surface" and that "[o]ver time, this can lead to your enamel thinning." *Id.* (CAC ¶¶ 30, 32). It then claims (twice, for emphasis) that the Product "actively repairs weakened enamel" and "[a]ctively repair[s] acid-weakened enamel." *Id.* (in blue font on the top center of the side panel and in first bullet point on the right). These statements convey that the Product can actually *repair* (i.e., thicken) thinning enamel. *Id.* Although the side panel also claims that the Product "locks in minerals" and "drive[s] minerals deep into the enamel surface," these

claims are *in addition to* the claims that the Product "actively repairs weakened enamel," and thus appear either as a distinct benefit or, at best, as one of the ways in which the Product "repairs" enamel to a thicker state. *Id.* (left side of the panel, top center, and second bullet point on the right).

Older versions of the Products, prior to the beginning of the class period, notably did not include the "Rebuilds," "Restores" and "Repair[s]" language. ER-37 (CAC ¶ 49). For example, a 2017 commercial shows that Defendants were very careful to state that the Products protect and strengthen only *existing* enamel. ER-33 (CAC ¶ 30). It explained that Sensodyne helps to *protect* enamel from the "***irreversible*** effects of acid erosion" and that "[u]nfortunately, once [enamel] gets damaged or wears away, it ***cannot be repaired*** or replaced." *Id.* In other words, Defendants' prior marketing conceded that repairing enamel was not possible and that remineralization is not a repair. *Id.* But then Defendants apparently decided that misleading consumers would be more profitable.

### B. Defendants Sell the Products Pursuant to the FDA's Fluoride Monograph, Which Expressly Prohibits the Challenged Claims.

The FDA issues monographs that allow certain over-the-counter ("OTC") drugs to be marketed without a formal new drug application. As part of this process, the FDA conducts a comprehensive evaluation of the active ingredients, dosage, uses, safety, and effectiveness of drug products, and sets strict requirements regarding labeling. To be legally sold under a monograph, a product must conform

to all applicable conditions, including labeling language that is narrowly defined and standardized. *See* 21 C.F.R. § 330.1 ("Any product which fails to conform to each of the conditions contained in this part and in an applicable monograph is liable to regulatory action"), 21 U.S.C. § 355h.

Fluoride toothpaste is regulated under the OTC Monograph M021: *Anticaries Drug Products for Over-the-Counter Human Use*, codified at 21 C.F.R. Part 355. The FDA has specifically evaluated fluoride's efficacy in reducing and preventing tooth decay and dental caries and has authorized its use for that singular purpose. *See* 21 C.F.R. § 355.50(b). The Monograph mandates that fluoride toothpaste include, under the "Uses" section of the Drug Facts label, a standardized indication: "Aids in the prevention of dental (select one of the following: 'cavities,' 'decay,' 'caries (decay),' or 'caries (cavities)')." *Id.* § 355.50(b).

Defendants do not dispute that the Products are sold pursuant to the Monograph. In addition to the required statement, which Defendants include in the Products' drug facts panel (*see* ER-35 (CAC ¶ 39)), marketers are permitted to make "[o]ther truthful and non-misleading statements, ***describing only the indication for use that has been established and listed in this paragraph (b)***." 21 C.F.R. § 355.50(b) (emphasis added). This provision authorizes only *non-misleading* statements that describe that a product helps *prevent cavities*. It does not permit

additional claims suggesting other benefits or uses, such as rebuilding, restoring, or repairing enamel.

Moreover, the Products are also subject to the general misbranding provision of the FDCA, 21 U.S.C. § 352(a), which provides that a drug is misbranded "[i]f its labeling is false or misleading in any particular." Even if not expressly barred by the Monograph, claims that misleadingly imply restorative or curative functions—beyond the established preventive use—are misbranded under federal law.

### C. FDAMA's Express Preemption Clause Permits States to Enact Their Own Labeling Regulations if They Are Identical to Federal Law.

The Federal Food, Drug, and Cosmetic Act ("FDCA") governs food, drugs, cosmetics, and medical devices, and delegates regulatory authority to the FDA. However, each category is regulated and preempted differently. For example, food labeling preemption is governed by the Nutrition Labeling and Education Act of 1990 ("NLEA"), whereas OTC drugs such as the Products at issue here are subject to a distinct preemption framework under 21 U.S.C. § 379r, enacted as part of the Food and Drug Administration Modernization Act of 1997 ("FDAMA").

Congress passed FDAMA, in part, to prescribe national uniform labeling for nonprescription drugs. To facilitate this goal, it included an explicit preemption provision stating that:

> no State or political subdivision of a State may establish or continue in effect any requirement . . . that relates to the regulation of a drug . . . that is different

> from or in addition to, or that is otherwise not identical with [the federal scheme].

21 U.S.C. § 379r(a). Importantly, Section 379r(f) expressly provides that "[n]othing in this section shall be construed to prevent a State or political subdivision from enforcing a requirement that is identical to a requirement" under federal law—preserving state-law claims that mirror the FDA labeling rules.

### D. Plaintiffs Bring Their Claims Under California Law Which Mirrors Federal Labeling Requirements.

California has long regulated drug labeling to protect consumers from misleading representations. Since at least 1939, California law has provided that "[a]ny drug or device is misbranded if its labeling is false or misleading in any particular." Cal. Health & Safety Code § 111330, originally codified at § 26240; *see also* 1939 Cal. Stats., ch. 730, § 1. This core requirement mirrors federal misbranding standards and reflects California's consistent role in safeguarding public health through accurate drug labeling. *Compare* Cal. Health & Safety Code § 111330 *with* 21 U.S.C. § 352(a).

In 1999, following the enactment of the FDAMA and 21 U.S.C. § 379r, California amended its Sherman Food, Drug, and Cosmetic Law to expressly align its requirements for nonprescription drug labeling with those of federal law. As part of this alignment, the California Legislature enacted Health & Safety Code § 110111, which mandates that California's regulations incorporate "[a]ll

nonprescription drug regulations and any amendments to those regulations adopted pursuant to the [FDCA], that are in effect on January 1, 2000, or that are adopted on or after that date." Cal. Health & Safety Code § 110111.

California's Unfair Competition Law (UCL), enacted in 1933, provides a private right of action for consumers who have lost money or property due to any unlawful, unfair, or fraudulent business practice—including violations of California's drug labeling requirements under the Sherman Law. *See* Cal. Bus. & Prof. Code § 17200 *et seq*. Thus, California law not only mirrors federal drug labeling obligations, but also affords consumers a meaningful remedy when those obligations are violated.

**E. The FDA Warning Letters from September 27, 2010.**

Pursuant to its enforcement powers, the FDA from time to time issues warning letters, which are informal notices that identify alleged regulatory violations and request voluntary corrective action. They often address multiple labeling or marketing statements on OTC drug products but do not purport to evaluate every claim made on a product.

The district court took judicial notice of two FDA warning letters issued nearly fifteen year ago, dated September 27, 2010, and Plaintiffs submitted a third issued the same day. *See* ER-6–8, 16–17, 20–21, 24–25. All three letters addressed

fluoride-based mouthwash products that included a combination of cavity prevention and other oral health claims. ER-16–17, 20–21, 24–25

One letter was issued to CVS Corporation for its Complete Care Anticavity Mouthwash. ER-20–21. That product included various claims, including that it "Helps prevent cavities, Kills germs that cause bad breath, Rebuilds enamel and strengthens teeth, and Promotes healthy gums." *Id.* The FDA's warning letter concerned the "Promotes healthy gums" claim because the only active ingredient in the product was fluoride. *Id.* The letter explained that the Monograph does not authorize "healthy gum claims" because they suggest that a product can prevent gum disease, which is not an approved use of fluoride. *Id.* The letter makes no mention of the "Rebuilds enamel and strengthens teeth" claim other than listing it as a claim made on the product. *Id.* It does not state that this claim is authorized. *Id.* Rather, the focus of the letter is solely on the improper antiplaque and antigingivitis claims. *Id.*

The other letter Defendants cited was issued to Walgreens regarding its Mouth Rinse Full Action product. ER-24–25. The product included claims such as "Freshens breath, Helps prevent cavities, Restores enamel, Helps strengthen teeth, Helps kill germs that cause bad breath, [and] Helps fight visible plaque above the gum line." *Id.* The product's active ingredient was sodium fluoride, which is governed by the Monograph. *Id.* The FDA issued a warning regarding Walgreens' claim that the product "Helps fight visible plaque above the gum line." It clarified

that antiplaque and antigingivitis claims are not approved for fluoride products. *Id.* The letter again makes no mention of the "Restores enamel" claim other than listing it as one made on the product. *Id.* It does not state that this claim is authorized. Once more, the letter is focused on improper antiplaque and antigingivitis claim. *Id.*

Another letter that Defendants did not include was issued to Johnson & Johnson for its Listerine Total Anticavity Mouthwash. Pls.' RFJN, Ex. 1. That product claimed to "Strengthen Teeth, Restore Minerals to Enamel, Fight Unsightly Plaque Above the Gum Line, Help Prevent Cavities, Kill Bad Breath Germs, and Freshen Breath." *Id.* Once again, the letter focused on the unapproved antiplaque and antigingivitis claims. *Id.* It is also noteworthy that this product clearly states that it only "Restores *Minerals to* Enamel," rather than broadly claiming to "Restore Enamel." *Id.* (emphasis added).

It appears—based on the fact that the three letters were sent on the same day, involving similar products, and similar claims—that the FDA had become aware that many manufacturers of mouthwash were making unauthorized antiplaque and antigingivitis claims. The FDA's decision at that time to send multiple letters regarding a particular set of unlawful claims does not imply that the other claims on these products were approved. Indeed, each of the letters states unequivocally that ***"the violations cited in this letter are not an all-inclusive list of deficiencies."*** ER-17, 21, 25 (emphasis added).

### F. The District Court Erroneously Dismissed Plaintiffs' Claims as Preempted Even Though Their State Law Claims Impose Duties that Are Identical to Federal Law.

Plaintiffs filed this action to stop Defendants' deceptive use of the terms "Rebuilds," "Restores," and "Repair[s]" on Sensodyne Pronamel toothpaste Products. The CAC asserts five causes of action under California law: (1) violation of the Consumers Legal Remedies Act ("CLRA") (ER-45–46 (CAC ¶¶ 78–85)); (2) violation of the False Advertising Law ("FAL") (ER-46–49 (CAC ¶¶ 86–96)); (3) common law fraud, deceit, and/or misrepresentation (ER-49–50 (CAC ¶¶ 97–104)); (4) violation of the Unfair Competition Law ("UCL") (ER-50–53 (CAC ¶¶ 105–118)); and (5) unjust enrichment (ER-53–54 (CAC ¶¶ 119–124)). Defendants moved to dismiss, arguing that Plaintiffs' claims were preempted by federal law and that the challenged claims were truthful because fluoride products remineralize existing enamel. *See* ER-6.

The district court granted the motion to dismiss, concluding that Plaintiffs' state-law claims were expressly preempted by the FDCA's preemption provision for OTC drugs. ER-8–13 (citing 21 U.S.C. § 379r). The district court reasoned that although the FDA's Anticaries Monograph permits only claims describing the Product's ability to prevent cavities or tooth decay, it does not expressly reference the terms "Rebuilds," "Restores," or "Repair[s]." On that basis, the district court held that Plaintiffs' claims—which sought to prohibit such language—imposed

additional labeling requirements not identical to federal law. ER-9–10, 12–13. In reaching this conclusion, the district court did not separately analyze the operative language of the Monograph, which limits labeling to truthful and non-misleading statements describing the single permitted indication: cavity prevention. Nor did the court address why that limitation would not function as a prohibition on claims like "Rebuilds," "Restores," or "Repairs" enamel, particularly where Plaintiffs allege that such terms are not understood by consumers to mean cavity prevention.

In addition, the district court concluded that Plaintiffs' claims were preempted because only the FDA—not courts—may determine whether the challenged labeling is misleading. Specifically, the district court reasoned that adjudicating Plaintiffs' claims "would mean that private litigants and judges are deciding what is false or misleading," which it deemed "inconsistent with the federal objective of national uniformity." ER-13.

According to the district court, the existence of an OTC monograph placed this case in a distinct regulatory category, effectively removing it from the reach of otherwise applicable preemption precedent. The district court accordingly declined to apply binding Ninth Circuit authority—including *Davidson* and *Kroessler*—on the ground that those cases did not involve FDA monographs. ER-13. In the district court's view, products subject to a monograph are governed by a different, broader

preemption framework that precludes courts from evaluating whether non-monograph claims are misleading.

Finally, the district court further concluded that, because the FDA had not objected to similar language in past enforcement letters regarding mouthwash products, Plaintiffs' theory conflicted with the FDA's regulatory determinations. The district court noted that the FDA warning letters issued in 2010 identified other unauthorized claims but did not object to "rebuild" or "restore" language, and it treated this omission as evidence that the FDA had "evaluated claims of 'Restores' and 'Rebuilds' in the context of the effect of oral care products on tooth enamel" and that the "evaluations did not indicate the use of these terms was misleading." ER-2–3.

As discussed below, this ruling rests on several interrelated errors regarding the scope of the Monograph, the structure of FDAMA's preemption clause and the significance of agency silence.

## SUMMARY OF THE ARGUMENT

Defendants' Rebuild Claims suggest that the Products can reverse enamel loss, not merely prevent decay. Plaintiffs allege that these representations are misleading because fluoride cannot regenerate enamel and that, in any event, they are outside the scope of the only type of claim expressly authorized by the FDA's Anticaries Monograph. These are factual issues that cannot be resolved on the

pleadings. Because Plaintiffs seek only to enforce labeling duties that mirror federal law and allege conduct that falls outside the scope of the monograph's safe harbor, their claims are not preempted. In concluding otherwise, the district court made at least four errors.

First, the district court erred in holding that Plaintiffs' state-law claims are preempted simply because the FDA's Anticaries Monograph does not explicitly state that the terms "Rebuilds," "Restores," or "Repair[s]" are prohibited. That reasoning misunderstands both the text and structure of the regulation. The fact that these three particular terms are not specifically banned by the Monograph does not make them permissible. The Monograph permits only one therapeutic indication—cavity and decay ***prevention***—and authorizes "only" truthful, nonmisleading statements describing ***that*** indication. 21 C.F.R. § 355.50(b). Plaintiffs plausibly allege that the challenged terms are both unauthorized and misleading, and thus violate California's Sherman Law, which adopts the FDA labeling standards verbatim, and California's consumer protection laws, which prohibit false or misleading labeling. These laws impose requirements identical to federal law. Under binding Ninth Circuit precedent, such parallel state-law claims are not preempted. *E.g., Kroessler*, 977 F.3d at 806.

Second, even if the challenged language is not expressly prohibited, it is not affirmatively authorized either—which means it is subject to 21 U.S.C. § 352(a), the FDCA's misbranding statute for OTC drugs, which prohibits misleading labeling.

The district court erred in holding that only the FDA—not courts—may determine whether labeling is misleading under the FDCA. That conclusion disregards controlling authority, including *Astiana*, which held that courts may evaluate whether a label is misleading when the FDA has not specifically regulated the term at issue. 783 F.3d at 758. Plaintiffs allege that the terms "Rebuilds," "Restores," and "Repair[s]" enamel convey a deceptive message about the Product's ability to regenerate enamel—a benefit not permitted under the applicable Monograph. Because Plaintiffs seek only to enforce duties that already exist under federal law, their claims are not preempted.

Third, the district court compounded its error by concluding that products subject to an FDA monograph—like fluoride toothpaste—are governed by a broader and more sweeping preemption framework than other FDA-regulated products. That conclusion lacks any basis in law. Monographs are simply one form of FDA regulation and are subject to the same express preemption provision that applies to other over-the-counter drugs. Under binding Ninth Circuit precedent, state-law claims that impose labeling requirements identical to those imposed under the FDCA are not preempted—regardless of whether the federal standard is articulated in a monograph, regulation, or guidance. The district court's decision to exempt monograph products from this settled framework conflicts with decisions like

*Kroessler* and *Davidson*, and threatens to shield a broad category of deceptive conduct from state enforcement without congressional authorization.

Finally, the district court erred in treating the FDA's silence in unrelated warning letters as tacit approval of the challenged claims. The district court assumed that, in issuing those letters, the FDA investigated the particular claims at issue in this case and determined that they complied with the Monograph, but the FDA did no such thing. Those letters addressed different products and focused on different violations, without making any determinations at all (and expressly reserving further determinations) about other claims, such as those at issue here. In any event, such letters cannot override the Monograph's plain language.

For these reasons, the district court's order must be reversed.

## STANDARD OF REVIEW

Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is subject to de novo review. *Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011). "Questions of statutory interpretation are reviewed de novo . . . as are questions of preemption." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1190 (9th Cir. 2018) (citing *Lopez v. Wash. Mut. Bank*, 302 F.3d 900, 903 (9th Cir. 2002)).

# ARGUMENT

## A. The District Court Erred In Holding that Federal Law Expressly Preempts Plaintiffs' Consumer Deception Claims.

A state law cause of action is expressly preempted under the FDCA only if it imposes a standard that is "different from," "in addition to," or "otherwise not identical with" federal labeling requirements. 21 U.S.C. § 379r(a). As this Court has held, the "preemption analysis turns on whether the challenged statements are *authorized* by the FDA's regulations or other pronouncements of similar legal effect." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) (emphasis added). Put simply, federal law preempts a state law cause of action challenging a specific labeling claim only if the FDA's regulations expressly require or permit that claim to appear on a label. *See, e.g.*, *Krommenhock v. Post Foods, LLC*, 255 F.Supp.3d 938, 958 (N.D. Cal. 2017) ("The only preempted . . . claims are nutrient content claims that have been expressly permitted by the FDA.").

Here, the Anticaries Monograph expressly *prohibits* the enamel-repair claims at issue here because it permits claims "*only*" about cavity prevention, excluding all other potential claims. The district court erred in concluding that federal law does not prohibit the claims "Rebuilds," "Restores," and "Repair[s]" enamel. *See* ER-9–10. This reading contradicts the plain text of the applicable regulation, which authorizes only cavity-prevention claims.

The FDCA permits certain OTC drugs to be marketed without an approved drug application if they comply with an applicable monograph. *See* 21 U.S.C. § 355h. Pursuant to that authority, FDA regulations provide that a drug must conform to all applicable conditions of the monograph, including labeling requirements. *See* 21 C.F.R. § 330.1. A drug that "fails to conform to an applicable monograph" is "liable to regulatory action." *Id.* The advertising for an OTC drug cannot prescribe or recommend any use beyond what is permitted in the product labeling. 21 C.F.R. § 330.1(d). The Anticaries Monograph, 21 C.F.R. Part 355, defines the exclusive scope of permissible labeling claims for fluoride toothpaste. The Anticaries Monograph states that an anticaries drug is "generally recognized as safe and effective and not misbranded" only if it conforms to all conditions in the Monograph. 21 C.F.R. § 355.1(a). In particular, the Monograph provides that fluoride toothpaste products may indicate only a *single* use: "[a]ids in the prevention of dental (select *one* of the following: 'cavities,' 'decay,' 'caries (decay),' or 'caries (cavities)')"). 21 C.F.R. § 355.50(b) (emphasis added). In addition to that authorized statement of use, the product label may include "[o]ther truthful and nonmisleading statements, describing ***only*** [that] indication." 21 C.F.R. § 355.50(b) (emphasis added). The inclusion of the word *"only"* is dispositive. It reflects the FDA's deliberate decision to prohibit all other claims—regardless of whether they are arguably truthful or related to oral health.

As the Supreme Court has emphasized, regulatory language must be interpreted according to its "ordinary, contemporary, common meaning." *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). The plain meaning of "prevent" is "to keep [something] from happening"—not to reverse or restore something that has already occurred.[2] Accordingly, the Monograph permits only claims that fluoride toothpaste helps prevent cavities or decay from forming—nothing more.

Plaintiffs allege that consumers understand terms such as "Rebuilds," "Restores," and "Repair[s]" to convey a fundamentally different therapeutic message than what the monograph authorizes: that the Product *reverses* enamel loss and damage, rather than merely *preventing* future cavities and decay. ER-28–29 (CAC ¶¶ 2, 4). These claims are not mere synonyms for the authorized indication. Rather, these representations communicate a benefit beyond the *only* authorized indication. Therefore, they fall outside the scope of § 355.50(b) and are barred.

The canons of construction also support this interpretation. Under *expressio unius est exclusio alterius*, the FDA's express authorization of anticavity claims necessarily implies the exclusion of other types of claims. *See Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) ("When a statute

---

[2] *Prevent*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/prevent.

limits a thing to be done in a particular mode, it includes the negative of any other mode." (quoting *Botany Mills v. United States*, 278 U.S. 282, 289 (1929))). The FDA was not required to enumerate every prohibited term, such as "rebuilds" or "restores." Its express approval of only a single type of claim—cavity (or decay) prevention—necessarily forecloses others. If the FDA had intended to permit additional claims, it would not have limited the indication to "only" the one listed.

Yet despite the plain language of the regulation, the district court followed the same flawed reasoning adopted in *Wiltz v. Chattem, Inc.*, No. CV 15-1352-R, 2015 WL 3862368 (C.D. Cal. May 8, 2015), a prior case that erroneously found preemption of a claim challenging the representation "Rebuilds Tooth Enamel" on a fluoride mouthwash. ER-7–9. In *Wiltz*, the district court summarily concluded—with minimal analysis—that the claim was permissible because it was not expressly prohibited. But this misreads the regulatory framework. The monograph does not function by listing forbidden claims; rather, it sets forth an exclusive category of approved statements and prohibits all others. *See* 21 C.F.R. § 355.50(b). As the Southern District of California correctly recognized in *Souter v. Edgewell Personal Care Co.*, 542 F. Supp. 3d 1083, 1097–98 (S.D. Cal. 2021), when a monograph governs labeling, false advertising claims based on unapproved representations are not preempted because enforcing truthful labeling "would not impose a state requirement that is different from or in addition to . . . the FDCA."

The district court's interpretation here, if accepted, would yield absurd results. It would allow manufacturers who sell products under an applicable OTC monograph to state the approved indication and also permit them to append any number of additional therapeutic claims—such as that a toothpaste reverses aging or cures gingivitis—because those claims are not expressly disallowed in the monograph. That approach would strip the word "only" of all meaning and render the monograph meaningless in violation of first principles of statutory interpretation. *See Duncan v. Walker,* 533 U.S. 167, 174 (2001) (It is "a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (citations omitted).

### B. The District Court Erred In Holding That Courts Are not Competent to Enforce the FDCA's Misbranding Provision.

Even if this Court agrees with the district court that the Anticaries Monograph does not expressly prohibit the challenged claims and that the monograph provides only a list of authorized claims, it does not follow that Plaintiffs' claims are preempted. At most, the monograph functions as a regulatory *safe harbor*: a fluoride toothpaste that complies with the monograph's conditions is considered "not misbranded." *See* 21 C.F.R. § 355.10. Conversely, claims that are not specifically mentioned in and thus, authorized by, the monograph are still subject to the FDCA's misbranding provision, 21 U.S.C. § 352(a), and ***may*** cause a product to be

misbranded if the claim is "false or misleading in any particular." *See also* Cal. Health & Safety Code § 111330 (Sherman Law analogue).

Here, Plaintiffs plausibly allege that the claims "Rebuild[]," "Restore[]," and "Repair" are not authorized by the Anticaries Monograph because reasonable consumers do not understand these to be cavity prevention claims. ER-28–29, 31–33 (CAC ¶¶ 2, 4, 23, 27). They further allege that these claims have a tendency to mislead reasonable consumers in violation of § 352(a) and Cal. Health & Safety Code § 111330. ER-28, 38, 50 (CAC ¶¶ 3, 52, 107). Nevertheless, the district court held that "no FDA requirement prohibits these claims" and that a "ruling in Plaintiffs' favor would create a labeling requirement that is different from, in addition to, or not identical with an applicable monograph." ER-13.[3] This reasoning is not only flawed, but directly contrary to this Court's precedent.

---

[3] The district court did not hold that the challenged claims—"Rebuild[]," "Restore[]," and "Repair"—were not plausibly misleading. Rather, it determined that it was not up for Courts to decide. ER-13. Its ruling rested entirely on preemption, concluding that Plaintiffs' claims sought to impose labeling requirements different from or in addition to those permitted by the FDA's Anticaries Monograph. *See id*. In any event, whether a label is misleading is a fact-intensive question that generally cannot be resolved on a motion to dismiss except in the rare case where no reasonable consumer could be misled. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008). This is not one of those rare cases.

This Court's decision in *Astiana*, is directly on point. There, the defendant advanced an argument virtually identical to the one adopted by the district court in this case: that allowing a false advertising claim based on the terms "All Natural" and "Pure Natural" on cosmetics would impose a labeling requirement "in addition to" the FDCA, since those terms are not specifically prohibited by federal law. 783 F.3d at 757. The defendant contended that the FDCA's express preemption and misbranding provisions for cosmetics—which mirrors the preemption and misbranding provisions for OTC drugs—barred all state-law claims alleging that cosmetic labels are false or misleading. *Id.* This Court squarely rejected that argument. *Id.* ("Hain's argument that [§ 362(a) and § 379s(a)] expressly preempt any state law claim that a cosmetic label is false or misleading does not square with Supreme Court precedent."). The Court emphasized that when a manufacturer voluntarily includes label language that is neither required nor specifically authorized by federal law, state-law claims challenging that language are not preempted. *Id.* at 758. It also recognized the absurd consequences that would follow if the FDCA's silence on a term like "Natural" were construed to give manufacturers unfettered discretion to use it however they pleased. *Id.* Instead, the Court reaffirmed that the FDCA does not displace state-law causes of action that seek to remedy conduct already prohibited under federal law—namely, labeling that "is false or misleading in any particular." *Id.* (quoting 21 U.S.C. § 362(a)).

That reasoning applies with full force here. The district court erroneously held that if Plaintiffs prevail, their suit would create a requirement in addition to the federal language by barring the language "Rebuilds," "Restores," and "Repair[s]" from the Product label, which terms it ruled are not regulated by the FDA. *See* ER-12–13 ("[T]here is no prohibition of using the term 'rebuilds' or 'restores.'"). But, as in *Astiana*, Defendants' claims are voluntary. Plaintiffs do not seek to impose requirements "different from" or "in addition to" federal law—they seek to enforce the FDCA's core prohibition on misleading labeling, as applied through a uniform reasonable consumer standard. *Astiana* squarely refutes the district court's view and confirms that Plaintiffs' claims are not preempted.

Indeed, one of the key cases the district court relied on in its decision—*Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371 (S.D.N.Y. 2014)—actually supports Plaintiffs' position. There, the court recognized that even if the monograph does not expressly prohibit the term "Restores Enamel," the statement may still violate § 352(a)'s prohibition on misleading labeling. *Id.* at 376. However, despite recognizing this fact, the court in *Bowling* still dismissed the plaintiffs' claims because the FDCA does not create a private right of action. But that limitation does *not* apply in California, which has enacted the Sherman Law, incorporating the FDCA's misbranding provisions into state law. *See* Cal. Health & Safety Code § 110111 (federal drug regulations "shall be the [state] labeling regulations"); §

111330 (mirroring § 352(a)). Here, as opposed to *Bowling*, California law provides a private right of action to enforce the Sherman Law through its Unfair Competition Law (UCL). Further, this Court recently reaffirmed that this state-law enforcement mechanism is fully consistent with federal law. *See Davidson*, 106 F.4th at 850.

In short, even if the monograph does not explicitly prohibit the challenged claims, it does not shield them either. Once outside the monograph's express authorization, a claim must stand on its own—and Plaintiffs have plausibly alleged that the claims "Rebuild[]," "Restore[]," and "Repair" violate § 352(a) by misleading consumers. That allegation is sufficient to state a claim under both the FDCA (as incorporated into California law) and California's consumer protection statutes.

In focusing on whether the FDA had specifically prohibited the challenged language, the district court erroneously held that only the FDA may determine whether a claim is misleading under 21 U.S.C. § 352(a), reasoning that "[t]o prohibit Defendants' use of certain terms (*i.e.*, rebuilds and restores) based on Plaintiffs' claims here would mean that private litigants and judges are deciding what is false or misleading," which is "'inconsistent with the federal objective of national uniformity' and is therefore preempted." ER-13 (quoting *Eckler v. Neutrogena Corp.*, 238 Cal. App. 4th 433, 457 (Cal. Ct. App. 2015)). That reasoning is contrary to congressional intent and well-established Ninth Circuit precedent. Taken to its

logical conclusion, the court's interpretation would preempt all false advertising claims involving OTC drugs, as well as those involving foods and cosmetics—because each of these categories of Products are governed by a substantially identical FDA misbranding statute and express preemption provision. *See* 21 U.S.C. § 343(a) (a food shall be deemed to be misbranded "[i]f its labeling is false or misleading in any particular"), § 362(a) (a cosmetic shall be deemed to be misbranded "[i]f its labeling is false or misleading in any particular"). If only the FDA can decide what is misbranded, then nearly all false advertising suits would be prohibited. However, that is not the law. As the Supreme Court explained in *Wyeth*, "[t]he FDA has limited resources to monitor the thousands of drugs on the market, and manufacturers have superior access to information about their own products." 555 U.S. at 578. Congress anticipated that state enforcement—including by private plaintiffs—would serve as a critical supplement to federal oversight. *Id.* And, indeed, in similar cases, this Court has long held that "[w]hether a reasonable consumer would be misled" is a question courts are "competent to address" and need not defer to the FDA's enforcement jurisdiction. *Reid*, 780 F.3d at 967.

### C. The District Court Erred in Holding that an FDA Monograph Should Be Subject to a Different Preemption Analysis than Other Federal Laws.

As explained above, the FDCA expressly preempts state law claims only if they impose labeling requirements that are different from or in addition to those of

the federal scheme. *See*, *e.g.*, *Astiana,* 783 F.3d at 757. It is a general principle of preemption, regardless of the source of law, that preemption requires an actual conflict. *Rice v. Norman Williams Co.,* 458 U.S. 654, 659, 664 (1982) (prohibiting courts from "seeking out conflicts between state and federal regulation where none clearly exists.") (emphasis added). Accordingly, as here, state claims that impose requirements that are identical to those already imposed by federal regulations are not preempted because the claims do not change a manufacturer's labeling duties. *See Kroessler*, 977 F.3d at 806 ("So long as California laws impose requirements identical to the FDCA, the FDCA will not preempt plaintiff's state law causes of action."); *Davidson* 106 F.4th at 850 (holding that state-law consumer claims premised on violations of California's Sherman Law—which adopts the FDA labeling standards—are neither expressly nor impliedly preempted). Here, as explained *supra*, Plaintiffs' state-law claims impose requirements that are identical to the federal labeling requirements set forth in the FDA's monograph and are therefore not preempted.

Rather than engage with this body of controlling precedent, the district court waved it away, asserting that cases like *Kroessler* and *Davidson* were inapplicable because "those cases are food labeling and other cases (like dietary supplements) not governed by a monograph." ER-13. Instead, it pointed to *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1188–90 (C.D. Cal. 2011), a non-binding district court case,

as proof that monograph-covered products require a fundamentally different preemption analysis. ER-13. That is completely unsupported. Indeed, even *Delarosa* provides no such holding. And even if it did, it would not justify ignoring this Court's clear guidance that preemption turns on whether state law imposes obligations that differ from or add to federal law—not on the regulatory mechanism the FDA happens to use.

In reaching its decision, the district court effectively adopted a form of field preemption, reasoning that OTC monographs warrant a broader and more sweeping preemption analysis than other forms of FDA regulation. *Id.* But that view finds no support in precedent and is inconsistent with 21 U.S.C. § 379r, which expressly defines the scope of preemption for nonprescription drugs. An FDA monograph is simply one form of federal regulation, and this Court has repeatedly held that FDA regulations do not preempt parallel state-law consumer protection claims so long as those claims impose requirements that are "identical to" those under federal law. *See Kroessler v. CVS Health Corp.*, 977 F.3d 803, 808 (9th Cir. 2020); *Davidson v. Sprout Foods Inc.*, 106 F.4th 837, 845 (9th Cir. 2024).

Not only is *Delarosa* of no import compared to this Court's controlling decision in *Kroessler*, but the district court also fundamentally misread it. In *Delarosa*, the court rejected a preemption defense raised by a homeopathic drug manufacturer, reasoning that because the FDA had not issued a monograph or

comprehensive regulatory framework for the product, the express preemption clause set forth in § 379r(a) did not apply to the plaintiff's claims. 818 F. Supp. 2d at 1185. However, the court further explained that even if § 379r(a) did apply, the result would be the same because the claims at issue did not seek to impose requirements "'different from or in addition to' the federal requirements." *Id*. at 1188. Although homeopathic drugs are not governed by an FDA monograph, they are subject to similar regulatory requirements under the FDCA, and are required to provide "adequate directions for use, a statement of ingredients, the dilution, and at least one major OTC indication for use." *Id.* The court evaluated these requirements in light of § 352(a), which prohibits misbranding on OTC drugs. *Id.* It concluded that "if a label has an indication for use that is false, or by virtue of being on the market implies that an OTC drug is effective when it is not, the label or advertising would be misleading and the drug would be misbranded." *Id.* This mirrors the exact circumstances presented here. Nevertheless, the district court inexplicably interpreted *Delarosa* to mean that the existence of monograph was determinative that Plaintiffs' claims are preempted.

Additionally, as discussed in *Delarosa*, 21 U.S.C. § 379r(d) identifies exceptions to the statute's express preemption provision. 818 F. Supp. 2d at 1190. Specifically, Congress refers to drugs "described in subsection (a)(1)" that are not subject to "a final order under section 355h"—the statutory provision under which

OTC monographs are issued. This language confirms the inverse: that products subject to a final order under § 355h—i.e., those regulated under an OTC monograph—are within the scope of § 379r, and that the scope of preemption must be interpreted accordingly. Most nonprescription drugs regulated under § 379r are, in fact, subject to a monograph. If the mere existence of a monograph triggered preemption, Congress would have simply said that states may not regulate monograph drugs at all. But it did not. Instead, if a product is subject to a monograph, § 379r(a)(2) preempts only those state requirements that are "different from or in addition to" federal requirements—confirming that identical state-law obligations are permitted, even when a monograph is in effect. That structure reflects a deliberate choice by Congress and forecloses the district court's expansive view of preemption.

### D. The District Court Erred In Holding that the FDA Warning Letters' Silence Amounted to a Binding "Evaluation" that the Terms "Rebuilds" and "Restores" Are Authorized.

The district court improperly relied on three FDA Warning Letters from September 27, 2010, to conclude that the agency has implicitly authorized claims such as "Rebuilds" and "Restores" enamel under the Anticaries Monograph. ER-6 (holding "the FDA has evaluated claims of 'Restores' and 'Rebuilds'" and "[t]he evaluations did not indicate that the use of these terms was misleading or violated the Anticaries Monograph requirements."). That conclusion mischaracterizes the letters, which neither evaluate nor approve such claims; disregards the express

disclaimer in the letters that they are not comprehensive assessments of all labeling deficiencies; and ignores binding Supreme Court precedent holding that warning letters are not entitled to judicial deference.

First, the FDA Warning Letters on which the district court relied do not evaluate or affirm the use of "restore" or "rebuild" enamel claims.[4] Each letter addresses unapproved antiplaque or antigingivitis representations made by companies marketing fluoride-based mouth rinses. *See* ER-16–17, 20–21, 24–25. For example:

- In the letter to CVS, the FDA objected only to the claim that the product "promotes healthy gums," stating that such language implies gum disease prevention—a use not permitted under the Monograph. The letter did not comment on the "rebuilds enamel and strengthens teeth" language, which it merely quoted from the label. ER-20–21.
- In the letter to Walgreens, the FDA objected to the claim "helps fight visible plaque above the gum line," again citing the lack of support for antiplaque benefits. The label also included the statement "restores enamel," but the letter offered no analysis or endorsement of that claim. ER-24–25.

---

[4] None of the three letters reference the language "Repair" at all, and therefore make no comment or observation—direct or implied—about the permissibility of the Repair Claims on the Intensive Enamel Repair Product.

- A third letter, issued the same day to Johnson & Johnson and submitted by Plaintiffs, followed the same pattern. The product claimed to "restore minerals to enamel"—a narrower representation than "restore enamel"—but again, the FDA's concern focused solely on an antiplaque claim. ER-16–17.

Importantly, all three letters include language stating that ***"the violations cited in this letter are not an all-inclusive list of deficiencies."*** ER-17, 21, 25 (emphasis added). This reflects a well-established feature of agency enforcement: regulators often target specific categories of violations as part of coordinated campaigns and do not undertake comprehensive evaluations of all claims on a product label. The timing here—three letters issued on the same day, addressing the same type of claim—strongly suggests that the FDA was conducting a focused campaign on antiplaque and gum health claims. In that context, the FDA's silence regarding the "restore" and "rebuild" language cannot be construed as implicit approval. The district court failed to address this language and did exactly what the FDA warned against—it treated the letters as an all-inclusive list of Monograph violations. *See Reid*, 780 F.3d at 965 ("[T]he letter's plain language does not authorize any heal claims that conflict with the FDA's existing plant stanol esters rule.").

In any case, FDA Warning Letters are not binding interpretations entitled to deference. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (collecting cases). Although agencies may be entitled to *Auer* deference when they offer an

authoritative interpretation of an ambiguous regulation, they cannot use informal mechanisms like warning letters to override or expand the scope of a duly promulgated rule. *See Kisor v. Wilkie*, 588 U.S. 558, 576–77 (2019) ("If uncertainty does not exist, there is no plausible reason for deference"). Here, the Anticaries Monograph is not ambiguous. It expressly limits permissible therapeutic claims to those stating that the product aids in the prevention of cavities and decay. *See* 21 C.F.R. § 355.50(c)(2). When a regulation speaks clearly and exclusively, it cannot be supplanted by the agency's silence in a nonbinding letter.

The FDA's warning letters are also not entitled to *Skidmore* deference either, which permits a court to accord persuasive weight to an agency's interpretation only if it reflects thorough reasoning. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). These letters—many of which are over a decade old—do not reflect a final or official agency position and offer no substantive reasoning regarding the claims at issue. Accordingly, they carry no persuasive weight under *Skidmore*.

Moreover, the Supreme Court has now abrogated *Chevron* deference. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). As a result, courts must independently interpret statutes without deferring to agency views. They cannot rely on informal FDA interpretations to circumvent statutory requirements. Under 21 U.S.C. § 352(a), a product is misbranded if its labeling is "false or misleading in any particular"—a prohibition that applies regardless of whether the

FDA initiates enforcement. It is the role of courts—not agencies—to determine whether labeling is misleading within the meaning of § 352.

Here, there is no ambiguity and no deference owed. Because the Monograph affirmatively permits only cavity prevention claims—and because Plaintiffs plausibly allege that Defendants' advertising exceeds that scope—the district court erred in treating the FDA's silence as implied regulatory approval. That silence is not authoritative, not persuasive, and not entitled to any form of deference.

## CONCLUSION

The Court should reverse the district court's order granting Defendants' motion to dismiss and remand the case with instructions to deny the motion.

Date: July 7, 2025

Respectfully submitted,

*/s/Matt T. McCrary/*

Seth A. Safier
seth@gutridesafier.com
Matthew T. McCrary
matt@gutridesafier.com
Rajiv V. Thairani (*application pending*)
rajiv@gutridesafier.com
GUTRIDE SAFIER LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs-Appellants*
*Anderson Silva and Grace Jones*

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, counsel is unaware of any related cases pending in this Court.

Date: July 7, 2025

GUTRIDE SAFIER LLP

*/s/Matthew T. McCrary/*
Matthew T. McCrary

*Attorneys for Plaintiffs-Appellants*
*Anderson Silva and Grace Jones*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-7620

I am the attorney or self-represented party.

**This brief contains** 8,958 **words,** including 197 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- (●) complies with the word limit of Cir. R. 32-1.
- ( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- ( ) complies with the length limit designated by court order dated ______.
- ( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Matthew T. McCrary **Date** 7/8/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the Plaintiffs-Appellants' Opening Brief and Excerpts of Record with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system on July 7, 2025. I certify that all participants in the case who are registered CM/ECF users will be served by that system.

Date: July 7, 2025

GUTRIDE SAFIER LLP

*/s/Matthew T. McCrary/*
Matthew T. McCrary

*Attorneys for Plaintiffs-Appellants*
*Anderson Silva and Grace Jones*