**No. 24-7620**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

ANDERSON SILVA and GRACE JONES, on behalf of themselves,
the general public, and those similarly situated,
*Plaintiffs-Appellants*,

v.

HALEON US INC. and HALEON US HOLDINGS LLC
*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of California
No. 24-cv-04059
Hon. Trina L. Thompson

---

# PLAINTIFFS-APPELLANTS' SUPPLEMENTAL BRIEF

---

Seth A. Safier
seth@gutridesafier.com
Matthew T. McCrary
matt@gutridesafier.com
Rajiv V. Thairani
rajiv@gutridesafier.com
GUTRIDE SAFIER LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs-Appellants*
*Anderson Silva and Grace Jones*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ........................................................................................1

THE SUPREME COURT'S DECISION IN *MONSANTO CO. V. DURNELL* ........2

*MONSANTO* COMPELS REVERSAL .....................................................................4

A. Consistent with *Monsanto*, Plaintiffs' Claims Are Parallel to and Coterminous with Federal Law. ..........................................4

B. Defendants Were Not Required by Federal Law to Use the Challenged Labeling. ...............................................................6

CONCLUSION .........................................................................................10

# TABLE OF AUTHORITIES

## Cases

*Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431 (2005) ................................ 2, 4, 9

*Kisor v. Wilkie*, 588 U.S. 558 (2019) ....................................................................9

*Monsanto Co. v. Durnell*, No. 24-1068, 2026 U.S. LEXIS 2721 (U.S. June 25, 2026) ..................................................................................... passim

*POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014)............................4, 8

*Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008) .......................................................6

## Statutes

7 U.S.C. § 136j(a)(1)(A) ...........................................................................................6

7 U.S.C. § 136j(a)(1)(E) ...........................................................................................7

7 U.S.C. § 136l...........................................................................................................7

7 U.S.C. § 136a(a)......................................................................................................6

7 U.S.C. § 136a(c)(1)(C)...........................................................................................6

## Other Authorities

*OTC Drug Review Process | OTC Drug Monographs*, https://www.fda.gov/drugs/otc-drug-review-process-otc-drug-monographs (last visited July 5, 2026)......................................................................8

## Regulations

21 C.F.R. § 330.1 .......................................................................................................7

21 C.F.R. § 330.10(a)..................................................................................................7

21 C.F.R. § 355.50(b) .................................................................................................5

40 C.F.R. § 152.44(a)...............................................................................................3, 6

40 C.F.R. § 156.70(c)...............................................................................................3, 6

40 C.F.R. § 156.10(a)(1)(vii) .....................................................................................6

## INTRODUCTION

In *Monsanto Co. v. Durnell*, No. 24-1068, 2026 U.S. LEXIS 2721 (U.S. June 25, 2026), the Supreme Court reaffirmed that the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") expressly preempts state-law claims only when they impose requirements "different from" or "in addition to" those imposed by federal law. Conversely, state-law claims that parallel and enforce federal requirements are not expressly preempted.

Although the Supreme Court held that the plaintiff's state-law claims in *Monsanto* were expressly preempted, it did so because—unlike here—the claims would have required Monsanto to use a label different from the one that EPA had approved and Monsanto was legally required to use. More specifically, the plaintiff wanted to use a state law failure to warn claim to require Monsanto to add a cancer warning to the label of its Roundup weed killer product. But EPA conducts an "extensive review" of a pesticide's health and safety data as well as the product's proposed label during its pre-market approval or "registration" process. And, over the years, "EPA ha[d] repeatedly concluded that glyphosate is not likely to cause cancer" and had not "required a cancer warning on Roundup's label." *Id.* at *6. Federal regulations also "require[d] . . . Monsanto to use the EPA approved pesticide label—here the Roundup label without a cancer warning—unless and until EPA approve[d] a different label," which meant that the plaintiff's attempt to require an

additional cancer warning using state law was preempted. *Id.*

Here, by contrast, Anderson Silva and Grace Jones ("Plaintiffs") allege that Haleon US Holdings LLC and Haleon US Inc. ("Defendants") ***violated*** the governing federal regulation because "Rebuilds," "Restores," and "Repair[s]" are not truthful and nonmisleading claims that the Products aid in the prevention of cavities. *See* CAC ¶¶ 2, 4. Plaintiffs therefore seek to enforce—not supplement or alter—the very federal requirements that govern Defendants' labeling. This is precisely the type of parallel claim that the Supreme Court recognized as actionable in *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431 (2005), one of the key authorities applied in *Monsanto*. Moreover, there is no "extensive" pre-market approval process for OTC toothpaste products similar to the registration process for a pesticide under FIFRA. So, although the EPA had determined that Roundup did not require a cancer warning on its label, FDA has not made any similar determination that the challenged claims here are cavity prevention claims in the first instance, let alone that they are truthful and nonmisleading, as the Monograph requires. Thus, *Monsanto's* rationale for finding preemption does not apply here.

## THE SUPREME COURT'S DECISION IN *MONSANTO CO. V. DURNELL*

In *Monsanto*, John Durnell brought a Missouri state-law action against Monsanto alleging that its Roundup weedkiller product caused his non-Hodgkin's lymphoma. No. 24-1068, 2026 U.S. LEXIS 2721, at *6. Durnell asserted a failure-

to-warn claim, alleging that Monsanto failed to include a cancer warning on Roundup's label. *Id.*

Durnell prevailed at trial. *Id.* at *15. Monsanto moved to set aside the verdict, arguing that the claim was expressly preempted by FIFRA.[1] The trial court denied the motion, and the Missouri Court of Appeals affirmed. *Id.*

The Supreme Court reversed, holding that Durnell's claim was expressly preempted because it sought to impose a state-law labeling requirement "in addition to or different from" requirements imposed under FIFRA. *Id.* at *21. The Court noted that EPA had reviewed and approved Roundup's labeling without a cancer disclaimer when registering the product and that EPA had also "repeatedly concluded that glyphosate is not likely to cause cancer." *Id.* at *13. Further, federal law expressly ***required Monsanto to use the EPA-approved label***. *Id.* at *24 (citing 40 C.F.R. §§ 152.44(a), 156.70(c)).

The existence of that federal requirement was dispositive. Because Durnell sought to require Monsanto to add a cancer warning that federal law did not require, and that Monsanto could not unilaterally add without EPA approval, a verdict in Durnell's favor would have forced Monsanto to violate federal law. The Supreme

[1] The Supreme Court recognized in its opinion that FIFRA's express preemption clause is "similar or identical" to the express preemption provision in the Food and Drug Administration Modernization Act of 1997 and at issue in the present appeal. *Id.* at *21; *compare* 7 U.S.C.S. § 136v(b) *with* 21 U.S.C. § 379r (prohibiting requirements that are "in addition to" or "different from" the federal scheme).

Court therefore held that the state-law failure-to-warn claim imposed a labeling requirement "in addition to or different from" federal law and was expressly preempted. *Id.* at *32.

## *MONSANTO* COMPELS REVERSAL

### A. Consistent with *Monsanto*, Plaintiffs' Claims Are Parallel to and Coterminous with Federal Law.

*Monsanto* does not alter the governing framework for express preemption. Indeed, in interpreting FIFRA's express preemption statute, which is similar to § 379r (at issue in the present appeal), it reaffirmed that state-law claims are preempted only when they impose requirements "different from" or "in addition to" those imposed by federal law. The decision rests on and reaffirms the Supreme Court's precedent in *Bates*. *Id.* at *18 (applying *Bates*). The *Bates* decision held that state law claims with "parallel requirements" to federal law are not preempted. 544 U.S. at 447.[2]

[2] *Bates* also considered an argument similar to one advanced by Defendants at oral argument that allowing parallel enforcement was untenable because it would "give juries in 50 states the authority to give content to FIFRA's misbranding prohibition, establishing a crazy-quilt of anti-misbranding requirements"; the Court rejected the argument because it goes against the "clear text" of the preemption clause and would effectively require "pre-emption of all state requirements concerning labeling." 544 U.S. at 447; *see also POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 117, (2014) ("Although the application of a federal [standard] by judges and juries in courts throughout the country may give rise to some variation in outcome, this is . . . quite different from the disuniformity that would arise from the multitude of state laws, state regulations, state administrative agency rulings, and state-court decisions that are partially forbidden by the FDCA's pre-emption provision.").

Here, Plaintiffs' claims do not attempt to impose any additional or different requirements on Defendants—only what federal law requires. Plaintiffs allege that Defendants violated the governing federal requirements by making representations that are not authorized by the OTC Monograph and therefore render the product misbranded under the FDCA. Plaintiffs can prevail only if the finder of fact concludes that Defendants violated the Monograph. Accordingly, Plaintiffs' state-law claims are entirely coterminous with, and impose no obligations beyond, the requirements of federal law.

Specifically, Plaintiffs allege that Defendants' "Rebuilds," "Restores," and "Repair[s]" representations violate federal law because the Monograph authorizes only truthful and nonmisleading claims that the products aid in the prevention of cavities. *See* 21 C.F.R. §§ 355.50(b); *see also* CAC ¶¶ 2, 4. Plaintiffs allege that the challenged claims are not cavity prevention claims because they state that the Products do more than just prevent cavities, i.e. that they can *restore* lost enamel, which is not an approved indication for the Products. CAC ¶¶ 2, 4. A judgment in Plaintiffs' favor would necessarily mean that a jury had found that Defendants violated federal regulations.

*Monsanto* presented the opposite circumstance. There, the plaintiff asserted a failure-to-warn claim alleging that Monsanto should have ***added*** a cancer warning to its EPA-approved label. *Monsanto*, No. 24-1068, 2026 U.S. LEXIS 2721, at *14.

But no federal law required Monsanto to include such a warning. To the contrary, as explained below, because EPA had approved Roundup's label without a cancer warning, federal law prohibited Monsanto from unilaterally changing that label absent EPA approval. *Id.* at *24 (citing 40 C.F.R. §§ 152.44(a), 156.70(c)). A verdict for Durnell therefore would have imposed a labeling requirement that federal law neither required nor permitted Monsanto to add on its own. *Id.* at *32.

### B. Defendants Were Not Required by Federal Law to Use the Challenged Labeling.

The OTC Monograph system at issue here differs fundamentally from the one the Supreme Court considered in *Monsanto*.[3] Under FIFRA, "pesticides must be registered with EPA." *Monsanto*, No. 24-1068, 2026 U.S. LEXIS 2721, at *7 (citing §§136a(a), 136j(a)(1)(A).) "Manufacturers must also propose a label for their products." *Id.* (citing 7 U.S.C. §136a(c)(1)(C); 40 C.F.R. §§ 156.10(a)(1)(vii)). "[B]efore registering a pesticide, EPA must evaluate a pesticide and its proposed label—and must determine that the proposed label includes all warnings necessary and adequate to protect human health and the environment, and is not false or

[3] The Supreme Court also relied on *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008) in *Monsanto*, which was already discussed by the parties in their briefing. *See* Appellant's Reply Brief at 22. *Riegel* was a case involving the express preemption clause of the Medical Device Amendments of 1976. 552 U.S. 312 at 316. In *Riegel*, as in *Monsanto*, the manufacturer was prohibited from making changes to its FDA-approved label without approval. *Monsanto*, No. 24-1068, 2026 U.S. LEXIS 2721, at *20 (citing *Riegel*, 552 U.S. 312 at 319).

misleading." *Id.* at *9. This is "an extensive review" process. *Id.* at *7–8. To register the pesticide, "EPA must conclude that [it] will not generally cause unreasonable adverse effects on human health" and that "its labeling complies with the requirements of FIFRA." *Id.* at *8. "EPA's registration of the pesticide and approval of the pesticide's label embodies the agency's considered judgment that a pesticide is not misbranded." *Id.* Further, once approved, the manufacturer is required by law to use the EPA-approved label, and, indeed, if it fails to, "it may be subject to civil and criminal penalties." *Id.* at *10 (citing 7 U.S.C. §§136j(a)(1)(E), 136l).

The OTC Monograph system operates differently. Rather than reviewing and approving individual product labels before they reach the marketplace, FDA promulgates generally applicable regulations governing entire categories of OTC drugs. *See* 21 C.F.R. §§ 330.1, 330.10(a) (describing OTC monographs as establishing conditions under which categories of OTC drugs are generally recognized as safe and effective and not misbranded, including conditions relating to labeling); *see also* U.S. Food & Drug Admin., *OTC Drug Review Process | OTC Drug Monographs*, https://www.fda.gov/drugs/otc-drug-review-process-otc-drug-monographs (last visited July 5, 2026). The Monograph provides an alternative to the individualized prescription drug premarket approval process by establishing standardized requirements under which manufacturers may market their products and reflects the less extensive role that the FDA plays in the regulation of OTC drug

labels. *Cf. POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014) ("[T]he FDA does not preapprove juice labels under these regulations. That contrasts with FDA's regulation of other types of labels, such as [prescription] drug labels, and is consistent with the less extensive role the FDA plays in the regulation of food than in the regulation of [prescription] drugs." (citations omitted)). Manufacturers themselves are responsible for ensuring that their labels comply with the Monograph, subject to enforcement action if they do not. Unlike *Monsanto*, there was no premarket review and approval of Defendants' labeling, no affirmative FDA determination that the challenged claims complied with federal law, and no requirement that Defendants use the particular labeling they chose.

Defendants will likely argue that FDA warning letters demonstrate that the challenged claims are authorized by the FDA in the same way that EPA approved the labels in *Monsanto*. That argument is misplaced. In *Monsanto*, the Supreme Court addressed labels that had been specifically reviewed and affirmatively approved pursuant to an "extensive" pre-market approval process and several subsequent re-approval processes requiring EPA to evaluate safety data and the precise labeling at issue. Here, by contrast, FDA has never reviewed or approved the labeling challenged in this case. Instead, Defendants ask the Court to infer that the FDA's silence in warning letters from more than ten years ago regarding different products constitutes approval of Defendants' labeling. That inference is untenable.

Agency silence is not agency approval.

Nor do FDA warning letters resemble the formal approval process at issue in *Monsanto*. As the Supreme Court held in *Bates* and reaffirmed in *Monsanto*, "registration determinations, just like EPA's regulations, 'give content to FIFRA's misbranding standards.'" *Monsanto*, 2026 U.S. LEXIS 2721, at *19 (quoting *Bates*, 544 U.S. at 453). By contrast, a warning letter is an informal enforcement mechanism reflecting the agency's preliminary enforcement position. It is not a binding determination that particular labeling complies with the FDCA, much less an affirmative approval of all claims not addressed in the letter. *See Kisor v. Wilkie*, 588 U.S. 558, 586 (2019) (holding that although agency interpretations of truly ambiguous regulations may be entitled to deference, "courts retain a firm grip on the interpretive function"). Unlike the affirmative, product-specific regulatory determination that underpinned the Supreme Court's analysis in *Monsanto*, Defendants rely only on the FDA's discretionary decision not to pursue enforcement of a claim the letter specifically stated *it was not analyzing*. That is a far cry from the express agency registration and approval that formed the basis of the Supreme Court's reasoning.

Defendants will also likely argue that Plaintiffs' claims improperly require the Court to second-guess FDA's determination that the Products prevent cavities through the process of remineralization, much as the Supreme Court in *Monsanto*

relied in part on EPA's determination that the pesticide at issue was safe and did not cause cancer. That argument attacks a strawman.

Plaintiffs have never disputed FDA's determination that fluoride toothpaste may prevent cavities through remineralization (though Plaintiffs have pointed out that FDA has made no specific determination that this is why fluoride helps to prevent cavities), nor would a verdict for Plaintiffs require a jury to reject or question that determination. FDA has never determined that the challenged claims—"Rebuilds," "Restores," and "Repair[s]"—are synonymous with "remineralizes" as Defendants assert. Rather, the only question presented is whether the challenged representations convey a message that exceeds what the Monograph permits. That inquiry turns on the meaning reasonable consumers attribute to the challenged language, not on whether the FDA was correct that fluoride toothpaste remineralizes teeth. Resolving that consumer-understanding question does not require the district court or a jury to second-guess any scientific or regulatory determination that FDA has made.

Accordingly, because federal law never required Defendants to make the challenged representations, this case does not present the irreconcilable conflict that drove the Supreme Court's analysis in *Monsanto*.

## CONCLUSION

*Monsanto* confirms that the district court's judgment should be reversed.

Date: July 8, 2026

Respectfully submitted,

*/s/Rajiv V. Thairani/*

Seth A. Safier
seth@gutridesafier.com
Matthew T. McCrary
matt@gutridesafier.com
Rajiv V. Thairani
rajiv@gutridesafier.com
GUTRIDE SAFIER LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs-Appellants*
*Anderson Silva and Grace Jones*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-7620

I am the attorney or self-represented party.

**This brief contains** 2,380 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ○ complies with the word limit of Cir. R. 32-1.
- ○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.
- ◉ complies with the length limit designated by court order dated 6/29/26.
- ○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Rajiv V. Thairani **Date** 7/8/26

*(use "*s/[typed name]*" to sign electronically-filed documents)*